**In the Matter of Edward ST. ONGE.**

**No. 2008–250–M.P.**

Supreme Court of Rhode Island.

Oct. 1, 2008.

Mark L. Smith, North Smithfield.

David Curtin.

misconduct committed while a member of the Bar.''

**O R D E R**

This disciplinary case came before the Court at its conference on September 17, 2008 pursuant to recommendations of the Supreme Court Disciplinary Board (board) that the respondent, Edward St. Onge (respondent), be disciplined. Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

> "If the [disciplinary] board determines that a proceeding * * * should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The respondent was the subject of three hearings before the board based upon complaints filed by four individuals. Two of those complaints were consolidated for one hearing, and the others were heard separately. The board has filed three separate decisions and recommendations with this Court, which we have consolidated in this opinion. For purpose of clarity we set forth the facts as found by the board in each matter by the name of the complainant.

**I**

**Facts and Travel**

**A**

**Merritt**

The respondent is the son of Dorothy St. Onge, who passed away in August, 2005. In July of 2002, Dorothy sold a parcel of real estate and after payment of the expenses of the sale she received $228,902.64. Dorothy endorsed the proceeds check and delivered it to respondent.[1] He deposited

---

1. There is a civil suit pending between the respondent and his sister as to whom the

those funds into his client account and used them to pay personal expenses for himself and for his mother. Funds belonging to other clients were also maintained in that account.

The formal charges brought by this Court's disciplinary counsel alleged that these funds, or portions thereof, remained in respondent's client account until May 31, 2005, at which time the funds were exhausted. The respondent acknowledges these funds were in his client account, but he is uncertain as to when the last of those funds were withdrawn. There was no allegation that respondent misappropriated funds belonging to Dorothy.

The board found that respondent's conduct in this matter violated Article V, Rule 1.15(a) of the Supreme Court Rules of Professional Conduct. Rule 1.15(a) provides, in pertinent part: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Rule 1.15 prohibits the commingling of client funds and the personal funds of a lawyer in one account. We previously have stated that the mandates of this rule are strict, and we have imposed discipline for failure to abide by its terms. *Matter of Indeglia*, 765 A.2d 444 (R.I.2001).

## B

### Westrick

On May 2, 2005, Alexandra Luciano and Frederico Diaz were injured in an automobile accident. They both sought medical treatment for their injuries from Amy Westrick, M.D. and hired respondent to represent them in a claim for damages.

Doctor Westrick's bill for services to Luciano was $1,555, and her bill to Diaz was $1,480. On or about August 15, 2005, respondent settled both claims and withheld sufficient funds from the settlements to pay the medical bills due to Dr. Westrick. However, he did not remit those funds.

In 2006, Luciano and Diaz sought treatment from Dr. Westrick for injuries unrelated to the automobile accident. At that time, she learned that their personal injury claims had been settled. Doctor Westrick sought payments of the medical bills from the respondent; when those payments were not forthcoming, she filed a complaint with the board.

At the disciplinary hearing, respondent testified that he believed that Dr. Westrick was not expecting payment of these bills, and that therefore, he had paid those funds to an assistant in his office who had provided services as an interpreter. He further testified that he had no intention of cheating Dr. Westrick out of her funds.

The board did not lend much credence to respondent's explanations. The board concluded that respondent violated Rule 1.15(b) and (c) of the Rules of Professional Conduct when he withheld funds from his clients' settlements sufficient to pay the medical bills and failed to make such payments.[2]

Rule 1.15(b) states:

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agree-

---

proceeds belong. We do not and need not resolve that issue in this disciplinary proceeding.

**2.** On February 16, 2007, this Court entered an order, effective April 15, 2007, amending the Rules of Professional Conduct. As a result of those amendments, the former Rule 1.15(b) has been renumbered to Rule 1.15(d), and the former Rule 1.15(c) is now Rule 1.15(e).

ment with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

Rule 1.15(c) provided:

"When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."[3]

Additionally, the board determined that respondent had not been fully candid in his responses to the disciplinary complaint in violation of Article V, Rule 8.1[4] of the Supreme Court Rules of Professional Conduct, and that he had violated Rules 8.4(b)[5] and 8.4(c)[6] as well.

## C

### Williams

The respondent represented Miriam C. Williams in a claim for personal injuries arising from an automobile accident. That claim was settled on October 13, 2006. The respondent de posited the settlement proceeds into his client account, and disbursed to Williams a portion of the funds

to which she was entitled. He withheld the sum of $7,294 from her settlement to be held in escrow in his client account pending resolution of a possible subrogation claim by her health insurer. However, no subrogation claim had been asserted, and respondent did not forward any funds to the insurer. As of October 30, 2006, those funds were no longer in his account.

Williams sought payment of the escrowed funds. The respondent advised her that he was seeking advice from this Court's Ethics Advisory Panel (panel), as to his responsibilities regarding payment of a possible subrogation claim when a lien or claim for reimbursement had not been asserted. On February 6, 2007, the panel issued its Opinion, No. 2007–02, in which the panel opined, "[i]n this case where the client insists that the settlement proceeds be disbursed to the client, and where the inquiring attorney has received no notice of a claim from the health insurer, the inquiring attorney must disburse the settlement funds to the client." On February 26, 2007, three weeks after respondent had received the panel's opinion, he wrote to Williams stating that he was waiting for the panel's advice prior to making payment to her, and proposing that he post her funds, which he no longer possessed, with the court. Williams subsequently filed a complaint with the board.

---

3. The decision and recommendation of the Supreme Court Disciplinary Board (board), refers to violations of Rule 1.5(b) and (c). We note the formal charges allege violations of 1.15(b) and (c), and that those rules are applicable to the facts. It appears that the references in the board's decision to Rule 1.5 was a transcriptional error.

4. Article V, Rule 8.1(a) of the Supreme Court Rules of Professional Conduct provides that a lawyer shall not "knowingly make a false

statement of material fact" in responding to a disciplinary matter.

5. Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

6. Rule 8.4(c) declares that it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

At the ensuing disciplinary hearing, respondent acknowledged that he owed another client money on a case, and he withdrew the sum of $8,500 from his client account, in cash, to pay that client. This withdrawal resulted in the loss of Williams' funds and respondent's inability to repay her. The board concluded that respondent violated Rules 1.15(b); 1.15(c); 8.1(b); 8.4(b); and, 8.4(c) in his representation of Williams.

## D

### Heugas

The final matter considered by the Board was a complaint filed by Altagracia Heugas. Pursuant to a written escrow agreement signed by Heugas, Alina Diaz, and respondent, respondent took possession of $30,000 which was deposited into his client account. The escrow agreement provided that bills relating to a parcel of real estate were to be paid from those escrowed funds. The respondent paid some of those bills; however, he also made unauthorized payments to third parties, and paid himself $11,000 in unauthorized fees.

Heugas subsequently sought new counsel, who made written requests to respondent for an accounting of the funds. The respondent failed to provide such an accounting, and did not disclose to Heugas' new attorney that he had made the payments to himself and to third parties.

At the disciplinary hearing, respondent claimed entitlement to the funds based on legal services he alleged were provided. However, the board found that he had not received permission from his client to take funds from the escrowed money, and that his taking of the funds was in clear violation of the escrow agreement to which he was a signatory. The board concluded that respondent had violated Rules 1.15(a), 8.4(b), and 8.4(c) in his representation of Heugas.

## II

### Sanctions

The board has presented this Court with recommended sanctions in each of the above-noted matters. These recommendations range from a reprimand to a suspension from the practice of law for no less than one year. Additionally, the board also required that the respondent make full restitution.[7] The board found several mitigating factors in making its recommendations. The respondent has no prior disciplinary history in his thirty-five years of practice, and he is presently being treated for a medical condition, the records in support of which have been submitted to the board under seal.

In reviewing the entire record we conclude that the respondent's suspension from the practice of law is necessary for the protection of the public. We do not find that the respondent intentionally defalcated funds belonging to his clients. He has exhibited, however, a callous indifference to his fiduciary obligations to his clients and has failed to abide by the standards of conduct set forth in our Rules of Professional Conduct. Accordingly, we hereby suspend the respondent from the practice of law in this state for a period of eighteen months, commencing thirty days from the date of this opinion. During this thirty-day period, the respondent shall conclude those pending matters that can

---

[7]. The respondent made full restitution to Williams after the board made its decision and recommendation. When he appeared before us at our conference on September 17, 2008, he advised this Court that he had paid the medical bills owed to Dr. Westrick. This has been confirmed by disciplinary counsel. The $11,000 owed to Heugas remains unpaid.

be resolved, and arrange for the orderly transfer of his remaining client matters to new counsel of the client's choosing. He shall not take on any new cases. Additionally, within ten days of the commencement of his suspension, the respondent shall comply with the mandates of Article III, Rule 15 of the Supreme Court Rules of Disciplinary Procedure.